UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
2011 JUN -8 PM 1:34
U.S. DISTRICT COURT

| | |
|---|---|
| KAREN PIPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) JURY DEMAND |
| DOLLAR GENERAL CORPORATION, | ) |
| | ) |
| Defendant | ) |

## COMPLAINT

Plaintiff Karen Piper states the following for her cause of action against defendant Dollar General Corporation:

### THE PARTIES

1.  Plaintiff Karen Piper is a U.S. citizen and a resident of Portland, Sumner County, Tennessee.

2.  Defendant Dollar General Corporation is a Tennessee corporation with its principal place of business located in Nashville, Davidson County, Tennessee.

3.  Defendant Dollar General is an "employer" as defined in the Americans with Disabilities Act, as amended, 42 U.S.C. §12111(5).

## JURISDICTION AND VENUE

4.     This action is brought under the Americans with Disabilities Act, as amended, 42 U.S.C. §§12101 *et seq.* (ADA). This Court has jurisdiction of plaintiff's ADA claim under 28 U.S.C. §1331 because the claim is a civil action arising under the laws of the United States. This Court also has jurisdiction of plaintiff's ADA claim under 28 U.S.C. §1343(a)(4) because it is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

5.     Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. §1391(b) because defendant is deemed to reside in this district under 28 U.S.C. §1391(c) and because the events giving rise to plaintiff's claim occurred in this district.

6.     All conditions precedent to plaintiff's claims under the ADA have been satisfied. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) on or about March 11, 2010. The EEOC issued a Notice of Right to Sue to plaintiff on March 10, 2011, and this complaint is filed within 90 days of the date plaintiff received the Right to Sue Notice.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by defendant from September 2007 until she was terminated on February 16, 2010. Plaintiff was hired originally as a Payroll Clerk. Plaintiff was promoted to the position of Garnishment Specialist in July 2009.

8. In the fall of 2008, while she was employed by defendant, plaintiff experienced the sudden, complete, and irreversible loss of sight in her left eye. In addition, plaintiff's uncorrected eyesight in her right eye is such that she is substantially limited in her ability to see out of that eye.

9. Throughout her employment with defendant, plaintiff was qualified to perform her job, and she was able to perform the essential functions of her job, with or without a reasonable accommodation.

10. Defendant knew that plaintiff was substantially limited in her ability to see.

11. The positions of Payroll Clerk and Garnishment Specialist required plaintiff to frequently and regularly view, comprehend, and process electronically stored information on a computer screen in order for her to complete required tasks of her job. Following the onset of her blindness in her left eye, plaintiff had difficulty seeing the information on her computer screen. When it was confirmed to plaintiff that the loss of sight was permanent, plaintiff asked her supervisor,

Charlotte Frakes, for a larger computer monitor so she would be better able to see the information on the screen and therefore be more efficient and productive performing her job related tasks. Plaintiff's supervisor, Ms. Frakes, denied plaintiff's request, telling plaintiff that Dollar General did not provide larger monitors and suggesting that plaintiff go on disability

12. Following plaintiff's promotion to Garnishment Specialist in July 2009, plaintiff's supervisor was Marguerite Burns After becoming a Garnishment Specialist, plaintiff continued to have difficulty viewing, comprehending, and processing electronically stored information displayed on her computer screen. As a result of these continuing difficulties, plaintiff asked Marguerite Burns for a larger monitor Ms. Burns denied plaintiff's request, saying that she herself would like a larger monitor but she was not getting a larger monitor and neither was plaintiff.

13. Because she was not provided with a larger monitor, plaintiff experienced difficulties in performing her necessary job tasks as a Garnishment Specialist Plaintiff therefore made a second request to Marguerite Burns for a larger computer monitor. Again, Ms Burns denied plaintiff's request for a larger monitor, asking plaintiff if she thought she was special and deserved a larger monitor than everyone else. In response, plaintiff said she was blind in one eye and for that reason was having problems getting her work done as fast as the other employees in the department, but Ms Burns refused to change her mind

4

14. Plaintiff also asked the Payroll Manager, Lisa Wachter, for a larger computer monitor, but Ms. Wachter also denied plaintiff's request

15. Despite the requests by plaintiff, defendant refused to provide plaintiff with a larger computer monitor, and as a result, plaintiff continued to have difficulty viewing, comprehending, and processing electronically stored information displayed on her computer screen. These difficulties resulted in plaintiff's making mistakes in her job, such as in data entry, forced plaintiff to work at a slower pace than other employees, and required plaintiff to seek the assistance of co-workers on occasion in the performance of her job.

16. After defendant refused to provide plaintiff with a larger monitor, resulting in plaintiff's being unable to get her work done as fast as the other employees in the department, plaintiff requested that the workload of the three Garnishment Specialists be more evenly distributed, since plaintiff's workload was generally higher than the other two Garnishment Specialists Defendant refused to redistribute any of the workload.

17. Because of the performance issues caused by defendant's refusal to provide plaintiff with a larger computer monitor or redistribute the department's workload, defendant began to discipline plaintiff by placing her on a performance improvement plan. The performance improvement plan was effective as of November 30, 2009, and resulted from perceived deficiencies in plaintiff's performance related to the fact that she was not provided with a larger monitor or

5
Case 3:11-cv-00554 Document 1 Filed 06/08/11 Page 5 of 10 PageID #: 5

redistributed workload as she had requested The plan specifically mentioned processing work "in a timely manner," which was a problem caused by the lack of a larger monitor and inequitable workload distribution.

18. The performance improvement plan contained review, or "milestone" dates of December 15, 2009 and January 7, 2010. As of the first milestone date, plaintiff's supervisor commented that she "would like to see a decrease in help needed from co-workers in order to stay current," which was an issue directly related to plaintiff's not being provided with a larger monitor or redistributed workload. As of the second milestone date, plaintiff's supervisor commented that she would like to see a "decrease in data entry errors," which also was an issue directly related to plaintiff's not being provided with a larger monitor.

19. On February 16, 2010, plaintiff was called into a meeting with management and terminated. Defendant's records related to the cause for plaintiff's termination state that other employees "continually assist [plaintiff] in processing [plaintiff's] garnishments" and "still have to do a lot of [plaintiff's] work so that the Company is not in default in processing garnishments." These articulated problems were the result of defendant's refusal to provide plaintiff with a larger monitor or redistributed workload.

20. During her employment with defendant, plaintiff was also subjected to embarrassing remarks and "practical jokes" from co-workers because of her disability. Co-workers hid objects from plaintiff and when plaintiff was unable to

6
Case 3:11-cv-00554 Document 1 Filed 06/08/11 Page 6 of 10 PageID #: 6

find the hidden objects, the co-workers would remark about how plaintiff was unable to find the objects because she was looking for them with the wrong eye. On another occasion, co-workers spoke about plaintiff's driving and how they needed to leave work before plaintiff so they would not be on the road at the same time as plaintiff. One co-worker stated that she should call the Department of Motor Vehicles and get plaintiff's license taken away from her because she was blind in one eye.

21. Plaintiff complained to management about the harassment from her co-workers based on her disability. Management held a meeting with plaintiff's co-workers and dealt with plaintiff's complaint simply by telling plaintiff's co-workers not to discuss anyone's medical conditions Following this meeting, however, the harassment continued.

## LIABILITY UNDER THE AMERICANS WITH DISABILITIES ACT

22 Plaintiff's condition described in Paragraph 8 substantially limited plaintiff in the major life activity of seeing. As a result, plaintiff's condition constituted a disability as defined in the ADA, as amended, 42 U.S.C. §12102(1).

23 Because plaintiff was qualified to perform her job, and she was able to perform the essential functions of her job, with or without a reasonable accommodation, plaintiff was therefore a qualified individual as defined in the ADA, 42 U.S.C. §12111(8)

24. The requests made by plaintiff for a larger computer monitor and redistribution of the workload described in Paragraphs 12, 13, 14, and 16 were requests for reasonable accommodations by plaintiff. As a result of these and other communications between plaintiff and defendant, and defendant's knowledge of plaintiff's physical condition, defendant had a duty to engage in a flexible, interactive and on-going process with plaintiff to determine what reasonable accommodations would allow plaintiff to continue to work and remain employed.

25. By refusing plaintiff's requests for reasonable accommodations and refusing to enter into a flexible, interactive process with plaintiff, and by terminating plaintiff as described in Paragraph 19, defendant discriminated against plaintiff because of her disability and/or because of the need for defendant to make a reasonable accommodation for plaintiff's impairment, and defendant failed to make a reasonable accommodation to the known limitations of plaintiff. By these actions, defendant discriminated against plaintiff based on her disability in violation of the ADA, 42 U S C. §12112.

26. By failing to take appropriate action to remedy the hostile work environment created by plaintiff's co-workers as a result of plaintiff's disability, defendant discriminated against plaintiff in the terms, conditions, and privileges of her employment on the basis of her disability in violation of the ADA, 42 U.S.C §12112.

27. As a result of defendant's violations of the ADA, plaintiff has suffered a loss of employment opportunities, earnings and benefits, and a loss of future earnings and earning capacity, and plaintiff has suffered, and continues to suffer, other damages, including, but not limited to, emotional and physical distress, humiliation, embarrassment, loss of esteem, and loss of enjoyment of life.

28. Defendant's actions described above were done with malice or a reckless indifference to plaintiff's federally protected rights.

## PRAYER FOR RELIEF

Based on the allegations of this complaint, plaintiff prays for the following relief:

1. For judgment against defendant for lost wages, compensation and other employment benefits;

2. For judgment against defendant for front pay in lieu of reinstatement;

3. For judgment against defendant for compensatory damages in an amount to be determined by the jury;

4. For judgment against defendant for punitive damages in an amount to be determined by the jury;

5. For pre-judgment and post-judgment interest;

6. For appropriate injunctive relief requiring defendant to cease and desist from violating the laws of the United States as described above;

7. For a declaratory judgment that the acts of defendant complained of in this complaint are in violation of the ADA;

8. For reasonable attorney's fees, expert witness fees, litigation expenses and costs in accordance with applicable law, including 42 U.S.C. §12205 and 42 U.S.C. §1988(b);

9. For such other general or equitable relief as plaintiff may be entitled to under the premises

PLAINTIFF DEMANDS A JURY TO TRY THIS CASE

*/s/ Wade B. Cowan*
Wade B. Cowan (S.C. #9403)
Suite 225
150 Second Avenue North
Nashville, Tennessee 37201
(615) 256-8125
wcowan@dhhrplc.com


Jerry Gonzalez (S.C. #18379)
2441-Q Old Fort Parkway
No. 381
Murfreesboro, Tennessee 37128
(615) 360-6060
jgonzalez@jglaw.net

Attorneys for plaintiff