UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAREN PIPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:11-554 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| DOLLAR GENERAL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the defendant Dollar General Corporation's Motion for Summary Judgment (Docket No. 18), to which the plaintiff, Karen Piper, has responded.[1] (Docket No. 22). For the reasons discussed herein, the defendant's motion will be denied, although the court will conclude that Piper is not the proper plaintiff and may not assert claims in this case. The matter will be stayed until Piper's bankruptcy estate is substituted as the plaintiff in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2011, Piper filed her Complaint in this court against her former employer, Dollar General.[2] The plaintiff alleges that, in the Fall of 2008, while working for Dollar General

---

[1] The defendant's motion was presented as a "Motion to Dismiss or, in the Alternative, for Summary Judgment." (Docket No. 18.) The court has ruled that the motion will be treated as one for summary judgment. (Docket No. 21.)

[2] Unless otherwise noted, the facts are drawn from the parties' Statement of Undisputed Material Facts (Docket No. 23) and related affidavits and exhibits. On a motion for summary

1

as a Payroll Clerk, she "experienced the sudden, complete, and irreversible loss of sight in her left eye." (Docket No. 14 at 3.) The plaintiff asserts that her loss of sight made her work for the defendant (as a payroll clerk and, subsequently, as a "garnishment specialist") significantly more challenging, as these jobs required the plaintiff "to frequently and regularly view, comprehend, and process electronically stored information on a computer screen." (*Id*.)

The plaintiff also maintains that she repeatedly requested of numerous supervisors a larger computer monitor so, "she would be better able to see the information on the screen and therefore be more efficient and productive performing her job related tasks." (*Id*. at 3-4.) All of these requests were denied, and the plaintiff's work suffered. (*Id*.) In light of her performance issues, the plaintiff was placed on a "performance improvement plan" in November 2009 and, when her work did not improve, she was terminated on February 16, 2010. (*Id*. at 5-6.)

On January 20, 2010, while still employed by the defendant, the plaintiff filed her Chapter 13 bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Tennessee. (*Id.* at 6.) On "Schedule B" of the plaintiff's Petition, the plaintiff swore that she had no "other contingent and unliquidated claims" and, in the Petition's "Statement of Financial Affairs," the plaintiff stated that she had not been a party to any "suits or administrative proceedings" in the year prior to filing for bankruptcy. (Docket No. 11 Ex. 1 at 10, 27.)

On March 2, 2010, the first meeting of creditors was held in the plaintiff's bankruptcy case. The plaintiff asserts that, at the meeting, she informed her bankruptcy attorney, Brian Roerhig, that she had been terminated from her job and that she showed Roerhig her application

---

judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

for unemployment compensation. (Docket No. 15 Ex. 5 at 1.) Also, she "mentioned to [Roerhig] that [she] had asked for a bigger monitor because of [her] blindness and that Dollar General had refused. [Roerhig] said nothing in response." (*Id*.)

During the meeting, the plaintiff filled out a questionnaire. (Docket No. 11 Ex. 2.) In answering that questionnaire, the plaintiff declared, "under penalty of perjury" that, among other things, she did not have "a lawsuit or potential lawsuit against a person."[3] (*Id*. at 2.) On March 5, 2010, the plaintiff's proposed Chapter 13 Plan, which had been filed along with the Petition, was confirmed. Under the Plan, the plaintiff was relieved from 80 percent of her debt to her general, unsecured creditors. (Docket No. 11 Ex. 4.) On March 11, 2010, the plaintiff filed her Charge of Discrimination with the EEOC, asserting that her rights under the Americans with Disabilities Act (ADA) had been violated by Dollar General. (Docket No. 18 Ex. 5.)

A year later, on March 10, 2011, the EEOC issued its Right-to-Sue letter. The plaintiff filed her Complaint on June 8, 2011, asserting a claim for disability discrimination under the ADA, based on the defendant's failure to accommodate the plaintiff's sight difficulties and its failure to address workplace harassment. (Docket No. 1.) On July 20, 2011, the defendant filed a Motion to Dismiss, arguing that the plaintiff's claims should be dismissed under the doctrine of

---

[3]The fact that the plaintiff was not technically incorrect (Dollar General is not a person) in answering this questionnaire, along with the stress, confusion, and lack of support from counsel that the plaintiff faced at the time she completed this questionnaire, are central points in the plaintiff's argument that the "judicial estoppel" doctrine, discussed below, should not apply to the plaintiff. (*See* Docket No. 22 at 4.) The plaintiff's affidavit, Amended Complaint, and subsequent briefing also stress that the plaintiff was ignorant of the legal ramifications of her conduct, including that she did not know the purpose of an EEOC Charge when it was submitted and that it was not until after she received the EEOC's decision on her Charge and she consulted with counsel that she realized that she had a potential claim against the defendant. (*See e.g.* Docket No. 15 Ex. 5 at 3.)

"judicial estoppel" as they were not disclosed during her bankruptcy proceedings. (Docket No. 11.)

In response to this, for the first time, the plaintiff took steps to amend her bankruptcy filings to include her claim against the defendant. Indeed, on August 5, 2011, the plaintiff filed amended Schedules with the Bankruptcy Court, disclosing the claim. According to the affidavit of plaintiff's counsel in this case, Jerry Gonzalez, on August 10, 2011, Gonzalez "spoke with James Davis-Smith, an attorney at the office of the Chapter 13 Trustee in Nashville, Tennessee." (Docket No. 16 at 1.) In the course of discussing the defendant's arguments for dismissal, Smith informed Gonzalez that, even if the lawsuit had been disclosed during the bankruptcy proceedings, the Plan would not have been any different, although the "Order confirming Chapter 13 Plan would have [contained] a provision informing the debtor to notify the court if any proceeds were obtained from the lawsuit." (*Id.*) Smith also informed Gonzalez that the Trustee was the "real party in interest" (not the plaintiff) and that the Trustee would be interested in pursuing the ADA claims on behalf of the bankruptcy estate. (*Id.*)

On August 11, 2011, the plaintiff filed her Amended Complaint, which, as the court ruled on August 16, 2011, mooted the Motion to Dismiss without requiring the court to consider the defendant's arguments for dismissal. (Docket No. 17.) On August 25, 2011, the defendant filed the pending Motion for Summary Judgment, once again arguing that the judicial estoppel doctrine requires dismissal. (Docket No. 18.) On September 9, 2011, consistent with Smith's statements to Gonzalez, the Chapter 13 Trustee in the plaintiff's bankruptcy case field a motion in the Bankruptcy Court to Employ Special Counsel to Represent the Bankruptcy Estate and Modify Debtor's Chapter 13 Plan. (Docket No. 22 Ex. 1.) The motion seeks to have plaintiff's

4

current counsel appointed counsel for the Trustee to pursue this case on behalf of the estate. (*Id.*) The deadline for filing responses to that motion is September 30, 2011, and the hearing on the motion is set for October 17, 2011. (*Id..*)

## **ANALYSIS**

The primary issue raised by the defendant's motion is whether the plaintiff may pursue this case. The court, addressing this issue first, concludes that she is estopped from doing so. However, as explained further, the plaintiff, in responding to the defendant's motion, offered a viable alternative path forward – that is, the plaintiff's bankruptcy estate be substituted for the plaintiff, as the estate is the "real party in interest."

### I.     Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving party shows that there is no genuine issue of material fact on the essential elements of the claim, then the burden shifts to the non-moving party to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the non-moving party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.  Judicial Estoppel

### A.  Legal Standard

The judicial estoppel doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation omitted). The Sixth Circuit has explained that judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (internal quotation omitted).

Although noting that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," the Supreme Court has identified the following considerations for determining whether to apply judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (internal

quotations omitted). The Supreme Court warned, however, that these factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id*. at 751.

In light of these considerations identified by the Supreme Court, the Sixth Circuit has held that "[t]he doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775 (internal quotation omitted).

As indicated above, the Bankruptcy Code requires debtors to file, among other things, "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(a)(1). This "duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action" to the bankruptcy court. *Bohanan v. Bridgestone/Firestone North American Tire*, *LLC*, 2007 WL 1091209 at *3 (M.D. Tenn. April 10, 2007)(Wiseman, J) (internal quotation omitted). The disclosure obligations "are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Id*.

The Sixth Circuit has found that judicial estoppel should be applied to bar causes of action that were not disclosed to the bankruptcy court. *See Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 425 (6th Cir. 2005) ("This court has previously found that pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel.") However, the Sixth Circuit has also held that, even where the above considerations would otherwise dictate that judicial estoppel should apply, its

application is "inappropriate when [the] omissions are the result of mere mistakes or inadvertent conduct." *Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 898 (6th Cir. 2004). Mistakes and inadvertence have been found where the debtor "lacks the knowledge of the *factual basis* of the undisclosed claim or where the debtor has no motive for concealment." *Id.* (emphasis added).

In its most recent judicial estoppel decision, the Sixth Circuit clearly laid out the path of analysis for the court. The court stated, "to support a finding of judicial estoppel, we must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [the plaintiff's] 'attempts' to advise the bankruptcy court of her omitted claim." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010).

Further, the *White* court determined that, on a summary judgment motion, if the defendant comes forward with evidence establishing the first two prongs ("contrary position" and "adoption"), along with "factual" knowledge of the claim and "motive," it is then the plaintiff's burden to come forward with affirmative evidence establishing "absence of bad faith." *Id.* at 478 n. 4. Moreover, the defendant's burden here can be met fairly simply and without very much individualized consideration of facts and circumstances. That is, to establish a "contrary

8

position," the defendant must show that the plaintiff did not disclose the claims she now asserts during the course of the bankruptcy proceeding and, to establish judicial "adoption," the defendant need only show that the bankruptcy court, for instance, "confirmed" the Plan, implicitly recognizing that the plaintiff had no such claims. *Id.* at 478-79.

Also, given that the duty of disclosure is continuing, the plaintiff subject to a judicial estoppel argument will have likely become aware of the "factual basis" of her claim at a time where disclosure to the bankruptcy court could have been made (undercutting a "lack of knowledge" argument). *Id.* at 479. And, a *motive* to conceal is presumed because "it is always in a Chapter 13 petitioner's interest to minimize income and assets" so that claims (and the judgments therefrom) get paid to the plaintiff, not the estate.[4] *Id.*

Finally, again, for the plaintiff attempting to show an "absence of bad faith," the court is to focus on the plaintiff's efforts to correct her bankruptcy schedules and to appraise the

---

[4]Therefore, much of the plaintiff's argument in briefing is misplaced. The plaintiff spends a considerable portion of her brief suggesting that judicial estoppel, as presently applied, is an illogical trap for the unwary and a"get out of jail free" card for the defendant. Essentially acting as if *White* does not exist, the plaintiff relies on non-controlling case law and irrelevant argument in maintaining that the defendant has not established its judicial estoppel claim. (*See* Docket No. 22 at 1-9, 12-17.) For instance, the plaintiff spends almost five pages arguing that the bankruptcy court's confirmation of the Plan does not constitute judicial "adoption" of the plaintiff's "contrary position," despite the fact that *White* holds that it does. (*Id*. at 12-16.) The court recognizes that *White* does appear to place a considerable burden on a plaintiff to fully understand his or her bankruptcy submissions and the disclosure obligations, and it is true that the decision produced a strong dissent from Judge Clay who argued that the majority had greatly expanded the reach of the judicial estoppel doctrine and stripped it of its "equitable" and flexible nature, leaving the district court to "rigidly," and without discretion, apply the doctrine. 617 F.3d at 484-89. The court is obligated, however, to apply the controlling law of the circuit. Moreover, the plaintiff's suggestion, noted above, that her Plan would not have been any different if her claim against the defendant had been disclosed is misplaced. The issue is not whether the Plan would have been any different but whether the record provides sufficient evidence that the plaintiff was attempting to keep assets for herself that rightfully belonged to the estate.

bankruptcy court of the undisclosed claims. *Id.* at 480. The *White* court stressed that "since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship," the timing of correction efforts is "significant," with affirmative efforts that pre-date a "judicial estoppel" motion from the defendant being "more important" than efforts generated in response to a dispostive motion. *Id.* at 480. Indeed, in *White*, the court ultimately concluded that it would not "consider favorably" such *post facto* efforts as, to do so, would "encourage gamesmanship." *Id.* at 481.

    B.    **Application to Plaintiff**

The judicial estoppel doctrine, as most recently applied by the Sixth Circuit in *White*, operates to bar the plaintiff's claims here. Again, the record plainly establishes that the plaintiff took a "contrary position" as that term is defined by not listing or subsequently disclosing her claims against the defendant and then filing this lawsuit, and, "adoption" is clear in that the court confirmed the Plan. Further, the defendant has shown that the plaintiff had knowledge of the "factual basis" of her claims such that she could have made a timely disclosure of the claims. Indeed, the plaintiff filed her EEOC Charge just six days after the Plan was confirmed. And, again, a litigant such as the plaintiff always has a *motive* to conceal, in order to reduce the pool of assets for creditors.

Finally, the plaintiff cannot show the required "absence of bad faith." There is no dispute that she made no effort to correct her bankruptcy schedules until after the omission was brought to the attention of the court through the defendant's filing of a dispositive motion. Under *White*, the court is to afford little, if any, credit to these *post facto* corrections. Additionally, the court can detect no basis, in light of *White*, to give credence to the plaintiff's claims that she did not

10

understand the materials that she was submitting or did not know what she was to disclose or when she was to make disclosures. Therefore, under the standard laid down by the Sixth Circuit, the plaintiff is judicially estopped from asserting her claims here.

### C. Applicability of Judicial Estoppel Doctrine to Trustee

Alternatively, the plaintiff argues that she is not the proper plaintiff in this case. (Docket No. 22 at 9-11.) That is, Section 541(a)(1) of the Bankruptcy Code dictates that the debtor's assets (such as claims) become part of the bankruptcy estate once the bankruptcy petition is filed. Indeed, courts have held that "a pre-petition cause of action is the property of the . . . bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's International*, 365 F.3d 1268, 1272 (11th Cir. 2004); *see also* 11 U.S.C. § 323 ("the trustee in a case under this title is the representative of the estate and the trustee in a case under this title has capacity to sue and be sued.") Additionally, in order for an asset to return to the debtor, it must be specifically "abandoned back" to the debtor pursuant to Section 554 of the Bankruptcy Code. See 11 U.S.C. § 554.

While the Sixth Circuit has not reached this issue, several circuit courts have concluded that, even if judicial estoppel would have barred the plaintiff from asserting her claims, the question is essentially moot because the claims should not have been asserted by the plaintiff in the first place, but, rather, they should have been asserted by the bankruptcy estate through the trustee, which is the "real party in interest."[5] *See* Fed. R. Civ p. 17(a)("an action must be prosecuted in the name of the real party in interest.")

---

[5]Indeed, it appears that the plaintiff in *White* did not suggest substitution and the opinion does not address the issue of whether the trustee could have asserted the plaintiff's claims. 617 F.3d at 475.

And, since the trustee is presumably innocent of the misconduct that barred the plaintiff's claims, there is no equitable basis to judicially estop the trustee. *See Parker*, 365 F.3d at 1272; *Reed v. City of Arlington*, 2011 WL 3506100, *2 (5th Cir. Aug. 11, 2011)(en banc)(holding that an "innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy"); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)("Decisions that have relied on judicial estoppel assume that the tort claim belongs to the debtor. . . . Yet why would [the plaintiff/debtor] own this chose in action? Pre-bankruptcy claims are part of debtors' estates. . . . [The plaintiff/debtor] appears to be an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy."); *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151, 1155 n. 3 (10th Cir. 2007)). Indeed, these courts have suggested that equity favors allowing the trustee to pursue these claims as it increases the potential that the plaintiff's creditors will get paid and ensures that, to the extent the defendant is liable for misconduct, the defendant is sanctioned. *See id.*

The plaintiff's alternative basis for keeping this action "alive" is sound. There appears to be no basis for dispute that the Trustee, representing the estate, is the "real party in interest," and, therefore, he is the one who should be prosecuting this claim. *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). There is also no suggestion of any basis for a judicial estoppel argument against the Trustee.

As noted above, the Trustee has stated his intention to prosecute this case on behalf of the estate and to employ plaintiff's current counsel. Therefore, the appropriate way forward is to stay this action for a brief period to allow the Trustee, on behalf of the estate, to be substituted for the plaintiff in this case. Fed R. Civ. P. 17(a)(3)("[t]he court may not dismiss an action for

failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."). If the Notice of Substitution has not been filed within 30 days of the date of the accompanying Order, plaintiff's counsel shall file a status report with the court, explaining the basis for the continued delay.

## **CONCLUSION**

While the plaintiff is judicially estopped from asserting her claims in this case under the Sixth Circuit's holding in *White*, that case does not reach the issue of whether the plaintiff's bankruptcy Trustee, representing the estate as the real party in interest, may pursue the same claims. Several circuit courts that have considered this issue have concluded that the Trustee should be the entity asserting the claims in the first place and is not estopped. Finding the reasoning of those courts sound, the court will deny the defendant's summary judgment motion and stay this matter for 30 days to allow the Trustee to file a Notice of Substitution.[6]

---

[6]The plaintiff also argued that she should be allowed to assert her non-monetary claims for injunctive relief and reinstatement because "equitable claims, such as injunctive relief, are not subject to judicial estoppel in this context because they would not have benefitted the creditors in bankruptcy and would not provide the plaintiff/debtor with a windfall." (Docket No. 22 at 18-20 citing *Barnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) and *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) for the proposition that a judicially estopped plaintiff may still assert claims for injunctive relief as they add nothing of value to the estate). The plaintiff goes on to suggest, without case support, that, in her own name, she should be permitted to pursue her claims for back pay and front pay because her salary (along with the assumption that she would continue to have her job) was taken into account when developing her Plan. (*Id.*) Using *White* as guidance, the court concludes that the Sixth Circuit would not allow a judicially estopped plaintiff such as Piper, who asserted *both* monetary and equitable claims at the onset of litigation, to proceed with her equitable claims. At the core of *White* is the notion that plaintiffs who were not completely forthcoming in their bankruptcy filings lose the benefit of being able to assert undisclosed claims. This notion of protecting the

13

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

bankruptcy process and promoting full disclosure is relevant and "in play" whether or not the undisclosed claims have an equitable element.